IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JACOB PHILLIPS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:18-cv-00515 |
| | ) | |
| MICHAEL RADER and NEW MILLENIUM | ) | By: Elizabeth K. Dillon |
| BUILDING SYSTEMS, LLC, | ) | United States District Judge |
| | ) | |
| Defendants. | | |

**MEMORANDUM OPINION**

Jacob Phillips alleges claims for violation of the Family and Medical Leave Act (FMLA) against his former employer, New Millenium Building Systems, LLC (New Millenium), and Michael Rader, production manager at New Millenium's manufacturing facility in Virginia. Before the court are cross-motions for summary judgment. (Dkt. Nos. 43, 45.) Phillips claims that defendants discriminated and retaliated against him for exercising his FMLA rights and that they interfered with the exercise of his FMLA rights. (Complaint, Dkt. No. 1.)

At the motions hearing, Phillips did not withdraw his motion for summary judgment, but Phillips essentially conceded that he was pinning his hopes on the existence of genuine issues of fact for trial regarding Phillips' reliance upon various representations about his available FMLA leave. As set forth below, however, the court finds that there are no genuine issues of material fact which would preclude the entry of summary judgment in favor of defendants. The court will therefore deny Phillips' motion, grant defendants' motion, and issue an order entering judgment in favor of New Millenium and Rader.

I. BACKGROUND

New Millenium operates a steel manufacturing facility in Salem, Virginia. Phillips was

employed at the facility from July 9, 2014, to October 21, 2016.  Phillips worked as a rigger, whose job is to lay out material on its design location and clamp and tack the material together to prepare the material for welding.  (Deposition of Michael Rader (Rader Dep.) 26:15–23, Dkt. No. 44-1.)  Phillips was regularly scheduled to work five days a week for eight hours a day, with some overtime on Saturdays.  (Deposition of Jacob Phillips (Phillips Dep.) 50:10–16, Dkt. No. 44-2.)  Phillips' supervisor was Chris Coble (Coble), Line 3 Supervisor, throughout his employment with New Millenium.

New Millenium is a wholly owned subsidiary of Steel Dynamics, Inc..  New Millenium adopted Steel Dynamic's Employee Handbook.  The Handbook includes an Attendance and Punctuality policy which requires employees, among other things, to report to work as scheduled and on time, and to report tardiness or absences as soon as possible.  The attendance policy also warns employees that poor attendance and excessive tardiness could lead to disciplinary action, up to and including termination.  The attendance policy also outlines general rules which New Millenium employees are required to follow to report excused or unexcused absences, and the progressive disciplinary policy used for unexcused absences.  (Dkt. No. 44-3 at NMBS 519.)

Phillips received a copy of the Employee Handbook when he was hired.  Under the attendance policy, Phillips understood that he was required to call in and report any absence on a call-in line; that he was required to arrive at work on time and work for a full day without leaving early and that failing to do so could lead to termination under the attendance policy; and that New Millenium issued progressive discipline as follows: written warning for the first and second violations, three-day suspension for the third violation, and termination for the fourth violation.  (Phillips Dep. 43:22–44:11, 63:5–24, 64:1–8.)  New Millenium could also issue a "final" written

2

warning in lieu of a suspension for a third violation. (Deposition of Christopher Coble (Coble Dep.) 24:2–7, Dkt. No. 44-5.)

The Employee Handbook also provides information regarding FMLA. New Millenium uses "a 'rolling' 12-month period measured backward for each employee from the date he or she uses FMLA leave" to calculate the 12-month period for FMLA leave. (Dkt. No. 44-3 at NMBS 516.)

On or about August 25, 2015, Phillips applied for intermittent FMLA leave for migraine headaches. (Dkt. No. 44-4, Ex. 33.) Phillips' migraines caused various issues, including severe pain, visual disturbance, loss of peripheral vision, numbness, vertigo, dizziness, vomiting, and nausea. (Phillips Dep. 23:3–9.) Phillips alleges that his migraine headaches caused him to be unable to perform one or more of his duties as a rigger. (Compl. ¶¶ 18–20, Dkt. No. 1.) Phillips' request for intermittent FMLA leave was approved around September 19, 2015, for a time frame of August 11, 2015, through February 10, 2016. (Dkt. No. 44-4, Ex. 34.) Defendants concede that, ultimately, Phillips was approved for intermittent leave from August 11, 2015, through the end of his employment. Phillips understood that he was entitled to twelve weeks of FMLA leave, which equates to 480 hours or 60 days, since he worked a five-day work week. (Phillips Dep. 74:12–75:3.)

New Millenium used a third-party administrator, The Hartford, to process FMLA leave. Phillips knew it was his responsibility to report the date and time of each FMLA absence to The Hartford. (Phillips Dep. 101:12–14, 112:12–23, 114:18–115:3, 116:7–11, 125:4–13; Dkt. No. 44-4, Exs. 12–26.) Phillips also understood that The Hartford would report whether the absence was FMLA-approved to New Millenium. (Phillips Dep. 121:5–16.)

In addition to receiving intermittent FMLA leave due to migraine headaches, Phillips received continuous FMLA leave for a non-work-related pectoral injury he suffered in November 2015. Phillips sustained the injury—a torn pectoral muscle—in a bench press competition. (Phillips Dep. 47:20–48:14, 209:1–11.) The injury caused him to miss work through December 22, 2015.

On or about November 13, 2015, Safety Coordinator Brian Hale emailed Rader, Coble, and Jeremy Hutchison, Accessories Supervisor, to inform them that Phillips had presented a doctor note for the chest injury, and that Hale instructed Phillips to contact The Hartford and seek FMLA leave. (Dkt. No. 44-4, Ex. 30.) On or about November 18, 2015, Loretta Williams, Payroll Specialist, emailed Rader to inform him that The Hartford approved continuous FMLA leave for Phillips through December 15, 2015. On or about December 8, 2015, Williams emailed Coble and Rader to tell them that Phillips' FMLA leave had been extended through December 16, 2015. For some unexplained reason, The Hartford did not record twenty-three days that Phillips missed work for this injury from November 16 to December 22, 2015.

At some point, having recognized this error, in August 2016, The Hartford sent a letter to New Millenium addressing a list of Phillips' absences reported as FMLA leave in November and December 2015, but for which The Hartford had no record. (Dkt. No. 44-4, Ex. 35.) After receiving the August 2016 letter from The Hartford, Rader met with Chad Bickford, General Manager at the facility, to discuss the letter and attempt to calculate Phillips' time remaining for FMLA leave based on absence reports. (Rader Dep. 23:17–24, 24:1–3, 145:15–147:19, 148:23–149:24, 152:18–20; Dkt. No. 44, Exs. 9, 35.) After the meeting, Bickford and Rader asked Williams to follow up with The Hartford regarding the dates at issue. Williams reported

4

that The Hartford did not have a record of the November 16, 2015 to December 22, 2015 dates as FMLA leave.  (Rader Dep. 150:14–18.)

After receiving two additional notices from The Hartford, Rader requested a meeting with Phillips on the morning of September 9, 2016.  (Rader Dep. 181:14–18; Phillips Dep. 73:16–74:1.)  Rader then met with Phillips along with two other supervisors—Coble and Jeff Purves—to discuss the discrepancies in absences raised by The Hartford in their recent notices. Rader provided Phillips with his absence report from the time frame in question—November 16, 2015, through December 22, 2015.  (Rader Dep. 179:24–180:4; Phillips Dep. 79:6–12.)

During the meeting, Phillips initialed each date in question on a multi-page attendance calendar, in the presence of Rader and Coble, to verify that each date on his absence report was appropriately designated as FMLA leave.  (Coble Dep. 52:2–11, 52:22–53:10; Dkt. No. 44-4, Ex. 9.)  Phillips also requested the opportunity to call The Hartford about the discrepancies in dates. (Phillips Dep. 81:6–24; Rader Dep. 182:14–19.)  Phillips called The Hartford, and The Hartford informed him that the dates between November 16, 2015, and December 22, 2015, were not noted as absences under FMLA in The Hartford system.  (Phillips Dep. 85:17–86:10, 133:2–10; Deposition of Megan Graham (Graham Dep.) 104:12–105:1, Dkt. No. 44-7; Dkt. Ho. 44-4, Ex. 73 at PHI000549.)  The Hartford records substantiate that Phillips called The Hartford on September 9, 2016.  (Dkt. No. 44-4, Ex. 73 at PHI000549.)[1]  Phillips informed The Hartford that he had been informed by his employer that he had exhausted his allotment of FMLA as of September 9, 2016.  (Graham Dep. 105:2–106:7; Dkt. No. 44-4, Ex. 73 at PHI000549.)  Rader had instructed Coble to make a list of dates to provide the information contained in Phillips' absence report in a simple single page format for Phillips to review.  (Rader Dep. 182:19–23; Dkt. No. 44-4, Ex. 10.)

---

[1] The parties dispute the time of this call, but the dispute is not material.

That same day, Phillips signed that single page list of dates, verifying that the twenty-three days listed on the document were FMLA days. (Phillips Dep. 81:22–24; Rader Dep. 182:24–183:5; Dkt. No. 44-4, Ex. 10.) None of the absences in question were counted against Phillips' attendance under the Attendance Policy. (Affidavit of Michael Rader (Rader Aff.) ¶ 7, Dkt. No. 44-6.)

At his deposition, Phillips conceded that if the dates in question were FMLA absences, as he had previously admitted during the September 9 meeting, then he received all leave to which he was entitled and more. He testified:

> Q. Okay. Can we at least agree that if those are FMLA dates, you got all the FMLA you were entitled to and actually more than you were entitled to in your last year of employment at New Millenium?
>
> A. If they didn't roll off.
>
> Q. That's fair.
>
> A. You know, adding those dates up that are in front of me along with, you know, the other dates—
>
> Q. You would have gotten all of your FMLA and then some, if we add them all up?
>
> A. Yes.

(Phillips Dep. 107:23–108:12.) Likewise, if the dates in question were not absences under the FMLA, Phillips agreed that he would have been subject to termination:

> Q. . . . [A]nd if they're not FMLA dates, you would have been subject to termination. Correct?
>
> A. If they're not FMLA and I missed these dates, then . . .
>
> Q. Fair?
>
> A. Then they have an opportunity to, but I figure it would be the

6

next time I missed.

(Phillips Dep. 108:13–19.)  Even so, Phillips was not terminated on September 9, 2016.

Phillips now characterizes the September 9, 2016 meeting as one where he felt threatened and coerced by fear of termination to agree that the dates presented to him counted as FMLA leave. (*See* Phillips Dep. 77–81.)  Phillips testified that he was "provided with dates" and was told or "demanded to tell what those dates were . . . . [A] paper was slammed down in front of me and I was asked what are these dates." (*Id.* at 77.)  Moreover, Phillips attempted to resolve the discrepancy between The Hartford's records and New Millenium's records by calling The Hartford on September 9, 13, and 16, 2016.  On September 13, Phillips contends that The Hartford told him that he had 124.5 hours of FMLA leave remaining.  (*See* Dkt. Nos. 46-53 at PHI000549, 46-59 at PHI000124.)  In support of his reliance argument, Phillips notes that The Hartford was responsible for determining whether to approve requests for FMLA leave by New Millenium employees, (Deposition of Chad Bickford (Bickford Dep.) 93, Dkt. No. 46-13; Coble Dep. 30; Graham Dep. 85), and New Millenium, in turn, relied on The Hartford's records concerning FMLA leave, (Williams Dep. 99.)

Before this September 9, 2016 meeting, Phillips was familiar with the company's disciplinary system.  He received his first warning for being absent during his probationary periodon August 5, 2014.  (Dkt. No. 44-4, Ex. 5.)  Then, between July 14, 2015, and September 11, 2015, Phillips received three written warnings under the attendance policy – the first two for being tardy and being absent, respectively.  (Dkt. No. 44-4, Exs. 3–5.)  The September 11, 2015 written warning, marked as a "final" warning, was issued due to Phillips' failure to work his scheduled shift on September 10, 2015, and failure to call and notify NMBS of the absence.  (Dkt.

7

No. 44-4, Ex. 5.)   This was Phillips' first "final warning."   (Rader Dep. 104:7–106:4.)   Then, on February 23, 2016, Phillips received a written warning, marked "final" warning, for arriving to work 1.25 hours late for his scheduled shift.   This was his second "final" warning.

While the twenty-three days were not counted as absences under the Attendance Policy, at some point on September 9, 2016—either during or after their meeting—Rader issued an Employee Warning Notice to Phillips, marked as a "final warning," for violating company policy by "exceed[ing] his FMLA usage" by "[g]oing 8 days past the 60 day policy."   (Dkt. No. 44-4, Ex. 8; Rader Dep. 196:18–197:21, 198:6–22.)   Based on company policy, the next infraction after final warning would normally result in termination.   (Rader Dep. 199:2–5.)

The next work day and despite the warning—Monday, September 12—Phillips called in to seek FMLA leave.   Phillips also left work early on Tuesday, September 13.   Still, Phillips was not terminated or disciplined under the attendance policy.

On the morning of October 21, 2016, Coble received a text message from Phillips indicating that he would be late for work.   (Dkt. No. 46-57.)   The message stated: "Chris I have a migraine.   I will not miss work but I might be late.   I don't want to loose [sic] my job for trying to be safe and not driving."   (*Id.*)   Coble texted Rader to inform him that Phillips would be late to work.   After Rader received Coble's text message, Rader met with Bickford to discuss Phillips' most recent absences, and they decided, together, to terminate Phillips that day.   (Rader Dep. 194:22–6, 195:7–196:7.)   At Rader's request, Williams called the The Hartford that day, and was told by The Hartford that if the list of dates previously signed by Phillips were counted as FMLA leave, Phillips had exhausted his leave under the FMLA.   (Rader Aff. ¶ 8.)

Phillips wrote a note to Rader on the day he was terminated, asking Rader to reconsider his

8

decision. (Dkt. No. 50-2, Ex. 28 at NMBS258.) In the note, Phillips acknowledged that he was out of FMLA leave, writing to Rader that his time "rolls over" on November 10. (*Id.*)

## II. ANALYSIS

### A. Summary Judgment Standards

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49.

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), 56(e). All inferences must be viewed in a light most favorable to the non-moving party, but the nonmovant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

In considering cross-motions for summary judgment, the court "examines each motion separately, employing the familiar standard" provided by Rule 56. *Desmond v. PNGI Charles*

*Town Gaming*, 630 F.3d 351, 354 (4th Cir. 2011). Thus, each motion is reviewed "on its own merits to determine whether either of the parties deserve judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).

## B. FMLA

The FMLA grants employees the prescriptive right to take up "to a total of 12 workweeks of leave during any 12–month period" when, inter alia, an employee suffers from "a serious health condition that makes the employee unable to perform" his job. 29 U.S.C. § 2612(a)(1)(D). It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" an employee's FMLA rights. 29 U.S.C. § 2615(a)(1). To make out an "interference" claim under the FMLA, an employee must thus demonstrate that (1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm. *See Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015).

It is also unlawful to retaliate against an employee for exercising his FMLA rights. *See* 29 U.S.C. § 2615(a)(2) (making it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by" the FMLA); *see also* 29 C.F.R. § 825.220(c) (noting that "employers cannot use the taking of FMLA leave as a negative factor in employment actions"). Retaliation claims brought under the FMLA are analogous to those brought under Title VII. *Laing v. Federal Express Corp.,* 703 F.3d 713, 717 (4th Cir.2013); *Yashenko,* 446 F.3d at 550–51. Plaintiff must prove three elements to establish a prima facie case of retaliation: (1) the employee "engaged in a protected activity"; (2) the "employer took an adverse employment action against" the employee; and (3) "there was a causal link between the two events." *Boyer–Liberto v. Fontainebleau Corp.,* No. 13–1473, 786 F.3d

10

264, 281, 2015 WL 2116849, \*14 (4th Cir.2015) (en banc) (quotation marks omitted). If the defendant advances a lawful explanation for the alleged retaliatory action, the plaintiff must demonstrate that the defendant's reason for taking the adverse employment action was pretextual. *See Laing*, 703 F.3d at 717, 719 (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

### C. Defendants' Motion for Summary Judgment

In his complaint, Phillips brings claims for FMLA retaliation and FMLA interference. (*See* Compl. ¶¶ 54–61, Dkt. No. 1.) He alleges that his October 21, 2016 termination was retaliation for exercising his FMLA rights and that the termination also interfered with his rights under the FMLA. (*Id.*)

As discussed above, plaintiff has conceded that he received all the FMLA leave to which he was entitled, and more. Therefore, plaintiff cannot succeed on an FMLA interference claim. *See, e.g.*, *Jones v. Gulf Coase Health Care of Delaware, LLC*, 854 F.3d 1261, 1268 (11th Cir. 2017) ("Relevant caselaw suggests that an employer does not interfere with an employee's right to reinstatement if that employee is terminated after taking leave in excess of the 12 weeks permitted by the FMLA."); *Marsh v. GGB, LLC*, --- F. Supp. 3d ----, 2020 WL 1951643, at \*5 (D.N.J. Apr. 23, 2020) ("[A]n employer's decision not to grant extended, unprotected leave, is not an interference with FMLA rights; said differently, Defendant cannot be found to interfere with Plaintiff's attempts to use time he did not have."); *Banner v. Fletcher*, Civ. No. 14-691-LPS, 2020 WL 758071, at \*7 (D. Del. Feb. 14, 2020) ("Because plaintiff was not eligible for FMLA leave at the time her employment was terminated, she cannot establish an interference claim under the FMLA."). *Wisz v. Wells Fargo*, Civil Action No. GLR-12-2957, 2014 WL 3051320, at \*7 (D. Md.

11

July 2, 2014) (granting summary judgment as to FMLA interference claim because "[h]aving exhausted her FMLA leave, having been given additional leave beyond that required under FMLA, and acknowledging no discipline occurred related to her leave beyond that required under FMLA," the employee "cannot demonstrate that she was prejudiced by Wells Fargo's failure to accurately track her available leave time and, thus, cannot establish an FMLA interference claim").

Further, Phillips has not attempted to establish a causal link between the exercise of his FMLA rights and his termination. To the contrary, the undisputed evidence demonstrates that Phillips was terminated for taking leave in excess of his FMLA entitlement and in violation of New Millenium's attendance policy. *See Marsh*, 2020 WL 1951643, at *5 (finding that plaintiff "fails to state a prima facie claim for FMLA retaliation for the same reasons his interference claim fails: he has not shown he was retaliated against for invoking a protected right because the FMLA leave time he sought to use had already been exhausted"). Phillips supplies no evidence that New Millenium's stated reason for his termination was pretextual.

Ultimately, Phillips' opposition to summary judgment rests on his contention that it was reasonable for him to rely on information received from The Hartford—acting as agent for New Millenium— that Phillips had FMLA leave remaining, such that New Millenium should be estopped from asserting that Phillips was not entitled to FMLA leave. No reasonable jury, however, could find that Phillips reasonably relied on any representation from The Hartford because Phillips received unequivocal notice from New Millenium that he was out of FMLA leave and the undisputed facts show that Phillips understood the likely consequences of any failure to abide by the New Millenium policies.

The Fourth Circuit has not yet applied equitable estoppel in the context of FMLA eligibility, but several other circuits and certain district courts within the Fourth Circuit have done so. *See Yaskowsky v. Phantom Eagle, LLC*, Civil No. 4:19cv9, 2020 WL 809378, at *9 (E.D. Va. Feb. 18, 2020); *Schmidt v. Town of Cheverly, Md.*, GJH-13-3282, 2014 WL 4799039, at *6 (D. Md. Sept. 25, 2014) (citing cases from the Second, Third, Fifth, and Sixth Circuits and deeming it proper to reach the merits of an FMLA equitable estoppel claim); *Blankenship v. Buchanan Gen. Hosp.*, 999 F. Supp. 832, 838 (W.D. Va. 1998) (applying equitable estoppel in the FMLA context). In other contexts, the Fourth Circuit has held that "equitable estoppel arises when one party has made a misleading representation to another party and the other has reasonably relied to his detriment on that representation." *Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1027 (4th Cir. 1997). "Reliance on the misrepresentation is reasonable only if the party asserting estoppel does not or should not know the truth." *Id.*

Phillips argues that it was "intimated" to him that "[The] Hartford was the ultimate authority on how many days were left under the FMLA and whether he was eligible." (Pl.'s Br. in Opp. To Defs.' Mot. for Summ. J. 17, Dkt. No. 51.) However The Hartford's purported authority was perceived by Phillips, it could not have overridden the clear, explicit, and unequivocal message from New Millenium on September 9, 2016, that Phillips had exhausted his leave entitlement. On that date, Phillips met with three of his supervisors, discussed the discrepancies in his leave record, and signed paperwork confirming that certain absences qualified as FMLA leave, the result being that he had no FMLA leave remaining. To the extent it may have been reasonable for Phillips to believe before September 9, 2016, that The Hartford was the "final word" on how much leave he had remaining, New Millenium explicitly told Phillips on that date

13

that such a belief was no longer reasonable going forward. Again, Phillips concedes that he knew the truth about how much FMLA leave he had remaining. Phillips' own actions on October 21, 2016, the day he was terminated, confirm that he knew he was out of leave. That morning, Phillips texted Coble about being late, stating he did not want to lose his job for being safe and not driving with a migraine. And later that day after he was fired, Phillips asked Rader to reconsider because, in Phillips' own words, Phillips' time would "roll over" on November 10. Given the foregoing undisputed evidence, it is impossible for any jury to conclude that Phillips' alleged reliance on representations by The Hartford that Phillips had available leave was reasonable.

Further, Phillips did not rely on the alleged misrepresentation to his detriment. On the day he was terminated, Phillips missed work due to a migraine headache, a condition which, according to Phillips, renders him unable to work. (*See* Dkt. No. 46-10 (physician's note stating that Phillips "would be unable to complete all functions related to his job when he has a migraine headache").) Thus, Phillips would have missed work even if he had the correct information from The Hartford. *See Dobrowski v. Jay Dee Contractors*, 571 F.3d 551, 557–58 (6th Cir. 2009) (finding no issue of material fact as to whether plaintiff relied on employer's misrepresentation of FMLA eligibility because plaintiff failed to identify any evidence that he would have rescheduled his surgery had he known he was not eligible for FMLA); *Baker v. Hunter Douglas, Inc.*, 270 F. App'x 159, 164 (3d Cir. 2008) (finding plaintiff could not show detrimental reliance because she was unable to perform the essential functions of her job and, therefore, she could not show that she could have returned to work absent her employer's statements).

Phillips likens his case to *Blankenship*, but that case is clearly distinguishable. In *Blankenship*, the plaintiff's employer told the plaintiff that her FMLA leave expired eight days

later than it actually expired. The plaintiff relied on this representation and scheduled her return to work the day after she was told by her employer that her leave expired. The employer terminated the plaintiff for returning to work eight days later than she was supposed to return. 999 F. Supp. 2d at 834. The court denied the employer's motion for summary judgment:

> Having misrepresented the return date to Blankenship, the Hospital reasonably could foresee her subsequent reliance on such information supplied by the Hospital's personnel director. As a consequence of this reliance, Blankenship suffered detriment when she was terminated. As a result, a factual issue exists as to whether estoppel renders Blankenship's firing improper. Regardless of what the FMLA requires of the Hospital in the way of notice, this alleged affirmative misrepresentation supports the application of equitable estoppel.

*Id.* at 839. While it was reasonable for the plaintiff in *Blankenship* to rely on her employer's misrepresentation that her leave expired on a date certain, it was not reasonable for Phillips to rely on The Hartford's representations, whatever they were, in light of the clear directives from Phillips' supervisors and direct employer that his leave had been exhausted. Also, unlike the situation with Phillips, there was nothing preventing the plaintiff in *Blankenship* from timely returning to work, so the facts suggested that she relied on the misrepresentation to her detriment.

For the foregoing reasons, the court concludes that defendants are entitled to summary judgment.

## C. Phillips' Motion for Summary Judgment

As noted above, the court has concluded, after construing the evidence in the light most favorable to Phillips, that there is no genuine issue of fact precluding judgment as a matter of law in favor of defendants because no reasonable jury could find that Phillips' reliance, if there was any, on The Hartford's representations about his remaining FMLA leave was reasonable. With

regard to Phillip's motion for summary judgment and considering the evidence in the light most favorable to defendants, genuine issues of material fact as to any reliance and the reasonableness of Phillips' reliance preclude the entry of summary judgment in favor of Phillips.

### III.  CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (Dkt. No. 43) will be granted and Phillips' motion for summary judgment (Dkt. No. 45) will be denied.   The court will enter an appropriate order.

Entered: September 9, 2020.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge